879 P.2d 501

**S. UTSUNOMIYA ENTERPRISES, INC., a Hawai'i Corporation, Plaintiff/Third–Party Plaintiff,**

**v.**

**MOOMUKU COUNTRY CLUB, a Hawai'i partnership, Chuck Maples and Les Hirahara, Defendants/Third–Party Plaintiffs–Appellants,**

**and**

**James L. Watson, D.D.S., Defendant,**

**and**

**Terry S. Hand, dba Hand Properties; Mary Anne Bruno and Akie Yoshikawa, Third–Party Defendants,**

**and**

**Japan Grand Prix (Hawai'i), Ltd., Intervenor–Appellee.**

**No. 16751.**

Supreme Court of Hawai'i.

Aug. 22, 1994.

---

David Schulmeister and Cynthia M. Johiro of Cades, Schutte, Fleming & Wright, Honolulu, for appellants on the application.

Paul R. Mancini, Matthew V. Pietsch and Lea O. Hong, of Case & Lynch, Kahului, for appellee in opposition.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In *S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club,* 75 Haw. 480, 866 P.2d 951, *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994), this court ruled in favor of appellants Moomuku Country Club, Chuck Maples, and Les Hirahara (collectively, Moomuku) and against appellee Japan Grand Prix (Hawai'i), Ltd. (JGP). Moomuku now seeks awards of attorneys' fees of $19,885.00, incurred in bringing the appeal, and $28,390.00, incurred at the trial level.

Based on the reasons set forth below, we award the $19,885.00 in attorneys' fees incurred on appeal, but deny the application for fees incurred at the trial level without

prejudice to an application for the trial-level fees on remand.

## I. *BACKGROUND*

The facts of this complex case are fully set forth in *Utsunomiya,* 75 Haw. at 484–92, 866 P.2d at 956–59. For purposes of our discussion regarding Moomuku's application for attorneys' fees, we reiterate only the basic background.

Utsunomiya, as purchaser, and Moomuku, as seller, signed a letter of intent with respect to certain real property located on the island of Maui. A dispute arose between the parties regarding the purpose of Utsunomiya's $200,000.00 deposit. Utsunomiya subsequently declared that it was rescinding the letter of intent and demanded the return of its deposit. Moomuku refused, and Utsunomiya filed suit. Pursuant to Hawai'i Revised Statutes (HRS) § 634–51 (1985), Utsunomiya also filed a *lis pendens* on the property. Moomuku subsequently sold the property to JGP. The sale occurred via a land purchase agreement and a limited warranty deed. Following the sale, JGP learned of Utsunomiya's *lis pendens.* JGP eventually intervened in the suit between Utsunomiya and Moomuku and filed a motion to expunge Utsunomiya's *lis pendens.* JGP also cross-claimed against Moomuku, alleging that the *lis pendens* was "contrary to promises, warranties and representations made by [Moomuku] in the Limited Warranty Deed ... which [Moomuku] delivered to JGP, in the Land Purchase Agreement and otherwise." JGP prevailed on the cross-claim at summary judgment and the trial court ordered judgment against Moomuku in the amount of $97,253.83. Moomuku appealed, and this court vacated the judgment, holding that because the *lis pendens* was invalid and should have been expunged, the trial court erred in granting JGP's motion for summary judgment on the crossclaim.[1]  *Id.* at 516, 866 P.2d at 968.

---

1. In *Utsunomiya,* we also held that the land purchase agreement merged into the deed and "afforded no independent right upon which JGP was entitled to summary judgment." *Id.,* 75 Haw. at 515, 866 P.2d at 968.

2. The 1993 revisions took effect on July 1, 1993. Session Laws of Hawai'i 1993, c. 200, at 307.

## II. *DISCUSSION*

### A. *Jurisdiction*

■ Relying on *Kaneshige v. Rosehill,* 52 Haw. 124, 471 P.2d 529 (1970), JGP argues that this court has no jurisdiction to award attorneys' fees incurred on appeal. Indeed, in *Kaneshige,* a case involving a lease containing an attorneys' fees provision, this court held that it was without original jurisdiction to award attorneys' fees incurred on appeal. *Kaneshige* relied on *Bank of Hawaii v. Char,* 43 Haw. 316 (1959). The *Char* court reasoned that enforcement of a contractual provision for attorneys' fees is an exercise of original (not appellate) jurisdiction. The court noted that its original jurisdiction was limited to areas set forth in Revised Laws of Hawai'i (R.L.H.) § 214–4 (1955) (now incorporated into HRS § 602–5 (1985)), which did not specifically include the power to award attorneys' fees incurred on appeal. *Char,* 43 Haw. at 320.

We note, however, that neither *Char* nor *Kaneshige* referred to R.L.H. § 214–6 (1955) (now incorporated into HRS § 602–5(7) (1985)), which grants to this court jurisdiction and power "[t]o make and award such judgments, decrees, order and mandates ... as may be necessary to carry into full effect the powers which are ... *given to it by law* [.]" HRS § 602–5(7) (emphasis added).

We note that HRS § 607–14 (Supp.1993)[2] provides in pertinent part:

> **Attorneys' fees in actions in the nature of assumpsit, etc.** *In all the courts,* in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorneys' fee, there shall be taxed as attorneys' fees, to be paid by the losing party ... a fee that the court determines to be reasonable ... provided that this

Although the underlying appeal was filed on January 7, 1993, the instant application for attorneys' fees was filed on February 28, 1994. Accordingly, we apply the new version of HRS § 607–14.

amount shall not exceed twenty-five per cent of the judgment.

. . . .

The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.

(Emphasis added.)

Further, Hawai'i Rules of Appellate Procedure (HRAP) Rule 39(d) (1984) states in pertinent part:

(d) **Bill of Costs; Objections**. . . . A party who desires an award of costs *and attorneys' fees* shall state them in an itemized and verified bill of costs and fees, together with a statement of authority for each category of item, filed with the clerk, with proof of service, no later than 14 days after entry of judgment.

(Emphasis added.)

Given section 607–14's provision for fees that may be sought "in all the courts," combined with HRAP 39(d) and HRS § 602–5(7), we conclude that this court has jurisdiction to award reasonable attorneys' fees incurred on appeal, and we may do so if the requirements of HRAP 39(d) and HRS § 607–14 are met. We therefore overrule *Kaneshige* and *Char.*

### B. *Moomuku's Application for Fees on Appeal*

We first examine whether Moomuku has met the requirements of HRAP 39(d). Moomuku timely submitted and properly served an itemized and verified listing of hours and corresponding rates incurred in preparing the appeal and cited HRS § 607–14 as authority for its motion; therefore, we conclude that Moomuku has met the requirements of Rule 39(d). Under HRS § 607–14, however, Moomuku would be entitled to an award of attorneys' fees only if there is an applicable "contract in writing" or if the action was "in the nature of assumpsit." [3] We

therefore next examine the applicability of HRS § 607–14 to the facts of this case.

#### 1. "A Contract in Writing"

The land purchase agreement between Moomuku and JGP contained a provision for fees; however, upon delivery, the land purchase agreement merged into the limited warranty deed. *Utsunomiya*, 75 Haw. at 515, 866 P.2d at 968. "[T]he doctrine of merger . . . disallows any recovery on the contract covenants once the grantee accepts a deed, so that the deed's covenants (if any) take up just when the contracts leave off." R. Cunningham, W. Stoebuck, & D. Whiteman, *The Law of Property* § 11.13, at 810 (1984) [hereinafter Cunningham]; *Clark v. Cypress Shores Development Co.*, 516 So.2d 622, 626 (Ala.1987) ("[t]he terms in the deed which follow[ ] the contract of sale become the sole memorial of the agreement which was once contained in the contract of sale. . . . [T]he deed controls as the contract, rather than the terms of the prior sales contract.); *Simpson v. Johnson*, 100 Idaho 357, 361 n. 1, 597 P.2d 600, 604 n. 1 (1979) ("the purchaser's rights are founded in the deed covenants, not the executed contract"); *see also* 6A R. Powell & P. Rohan, *Powell on Real Property* ¶ 881[6][h], at 81–185 (1994) [hereinafter Powell] ("[a]fter receiving the deed, the purchaser must look for protection promised by the grantor under the deed rather than asserting the previously existing contractual duty"). Therefore, Moomuku cannot rely on the provision for fees in the land purchase agreement. Consequently, there is no "contract in writing" upon which an award of attorneys' fees could be made; we therefore next examine whether the action was "in the nature of assumpsit."

#### 2. "In the Nature of Assumpsit"

JGP argues that "a deed is not a contract[;] [t]hus, even if damages are sought from breach of covenants in a deed, this is not an action in the nature of assumpsit." This court has defined "assumpsit" as "a common law form of action which allows

---

**3.** Ordinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement. *Uyemura v. Wick*, 57 Haw. 102, 108, 551 P.2d 171, 176 (1976); *Larsen v. Pacesetter Systems, Inc.*, 74 Haw. 1, 51, 837 P.2d 1273, 1297, *reconsideration granted in part, denied in part*, 74 Haw. 650, 843 P.2d 144 (1992).

for the recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." *Schulz v. Honsador, Inc.*, 67 Haw. 433, 435–36, 690 P.2d 279, 281 (1984) (citation omitted); *Coll v. McCarthy*, 72 Haw. 20, 32, 804 P.2d 881, 888 (1991); *see also Larsen*, 74 Haw. at 52, 837 P.2d at 1298 ("Black's Law Dictionary ... defines [assumpsit] in various ways, all of which have some relationship to a promise or engagement.").

In *Honsador*, this court noted that the legislature changed the language in the original version of HRS § 607–14 from "all actions of assumpsit" to "all actions in the *nature* of assumpsit." 67 Haw. at 435, 690 P.2d at 281–82 (emphasis in original). The court held that "[a]n action for breach of warranty clearly is in the nature of assumpsit, inasmuch as a warranty arises from the contractual relationship between buyer and seller, and a breach of warranty constitutes a breach of contract." *Id.* at 436, 690 P.2d at 282 (citing *Au v. Au*, 63 Haw. 210, 219, 626 P.2d 173, 180 (1981)). We note, however, that the action in *Honsador* combined assumpsit (breach of warranty) and non-assumpsit (negligence) claims. In concluding that the action was "in the nature of assumpsit," the court reasoned that "the nature of a claim" is "determined from the substance of the entire pleading, the nature of the grievance, and the relief sought, rather than from the formal language employed or the form of the pleadings." *Id.* at 436, 690 P.2d at 282 (citation omitted). Although negligence theories were also asserted, the court concluded that the action was "in the nature of assumpsit;" therefore, we reversed the trial court's order denying an award of attorneys' fees.

In *Civic Realty, Inc. v. Development*, 3 Haw.App. 101, 641 P.2d 1361 (1982), the Intermediate Court of Appeals (ICA) suggested in dictum that an action for breach of a covenant in a warranty deed is in the nature of assumpsit, and, therefore, attorneys' fees are recoverable under HRS § 607–14. In *Civic Realty*, appellee Ella Ackerman had conveyed a parcel of land to appellant Patricia Valdez via a warranty deed, allegedly by mutual mistake. After Ackerman was sued

by Civic Realty, Inc. and J. Tamashiro, Inc., she filed a third-party suit against Valdez, seeking indemnification and claiming that as a result of Valdez's refusal to correct the mistake, Ackerman became amenable to suit. The trial court ruled against Ackerman, denying indemnification. Valdez applied for attorneys' fees on two grounds, on the deed and under HRS § 607–14. The trial court denied the application and Valdez then appealed. *Id.* at 102, 641 P.2d at 1362.

On appeal, the ICA held that the third-party suit was an equitable action in the nature of reformation, not in the nature of assumpsit, and therefore affirmed. The court noted, however, that:

> Had [Valdez's] title been attacked by some third party, it is well settled that *she would be able, in an action for breach of covenant, to recover from [Ackerman] her attorney's fees incurred in defending her title. Since the action to recover such fees would have been in the nature of assumpsit,* statutory attorney's commissions in that action under § 607–14, HRS, would have been recoverable also. [Valdez] would not, however, have been able to recover attorney's fees incurred in the action against [Ackerman] for breach of covenant *except as provided by § 607–14, HRS,* since, as has been said:
>
>> Nor can the covenantee recover an attorney's fee incurred in his action against the covenantor for the breach.

*Id.* at 102–03, 641 P.2d at 1362–63 (citation omitted) (emphasis added).

▮▮▮▮ A covenant against encumbrances is a personal covenant obligating the grantor to pay damages if the covenant is breached. Powell, *supra*, ¶ 897[1][b], at 81A–27. As a personal covenant, it generally does not run with the land. *See, e.g., Coral Gables v. Payne*, 94.F.2d 593, 595 (4th Cir.1938); *see also* cases cited in 20 Am.Jur.2d *Covenants, Conditions and Restrictions* § 82 n. 19 (1965). A major distinction between an action on the covenant in the deed, on the one hand, and the action on the prior land purchase agreement, on the other, is the nature of the remedies for breach.

Under the [purchase agreement], the purchaser may get specific performance with

abatement for the title defect, rescission and restitution, or damages.... A claim based on deed covenants, other than the covenant of further assurances, can give rise only to damages, and recovery is nearly always limited to the amount the grantor received for the property, plus interest and in some cases attorneys' fees.

Cunningham, *supra*, at 810–11 (footnotes omitted). An action on the covenants, however, is still primarily contractual. *See* Powell, *supra*, ¶ 900[1], at 81A–130–31 ("[t]he creation of a covenant [in a warranty deed] is basically a matter of private contract. Which of the covenants will be included in the deed will depend on the agreement of the parties.... Since covenants are a matter of contract, they may be structured as desired by the grantor and grantee.").

■ At common law, an action to enforce covenants in a warranty deed was an action in "covenant," not assumpsit. *See, e.g., Kimball v. West*, 82 U.S. (15 Wall.) 377, 379, 21 L.Ed. 95 (1872) ("[f]or any defect in [a warranty deed] the law gave ... a remedy by an action on the covenant.") [4] Covenant was an action to enforce a contract under seal; however, seals have long since lost significance in contract law. *See, e.g., Wood v. Ladd*, 1 Haw. 23 (1847) ("[t]here is no law in this Kingdom which makes a seal necessary to the validity of a deed."). Thus, "covenant is rendered obsolete as between two forms of action *ex contractu* to recover damages, and assumpsit made current as the other.... In this jurisdiction, therefore, assumpsit rather than covenant lies for recovery of damages in breach of a contract, whether it be under or not under seal." *Allied Amusements v. Glover*, 40 Haw. 92, 95 (1953). It therefore follows that an action for breach of a covenant against encumbrances in a deed is "in the nature of assumpsit." *See Lipsie v. Dickey*, 375 Pa. 230, 100 A.2d 370, 371 (1953) (action brought "in assumpsit to recover for

[an] alleged breach of a covenant of warranty contained in a deed.").

We agree with the ICA's dictum in *Civic Realty* and conclude that covenants in a warranty deed are contractual in nature; thus, an action for breach of covenants against encumbrances in a deed is "in the nature of assumpsit." Accordingly, attorneys' fees incurred in defending an attack on title against a third party would be recoverable as consequential damages in a corresponding breach of covenant action against the grantor of the "defective" property. We note, however, that generally fees incurred in bringing (or defending) the breach of covenant action itself (which is the situation in Moomuku's application) are not recoverable, unless there is a statutory provision such as § 607–14. *See Forrer v. Sather*, 595 P.2d 1306, 1308–09 (Utah 1979) (fees incurred defending title are recoverable as damages, but fees incurred in bringing breach of covenant suit are not recoverable absent statutory or contractual authority for fees); *but cf. Howard v. Clanton*, 481 So.2d 272, 276–77 (Miss.1985) (regardless of statutory authority, reasonable attorneys' fees are awardable to a covenantee as long as those fees and costs, when combined with the damages awarded, do not exceed the purchase price of the property conveyed).

Therefore, pursuant to HRS § 607–14, we conclude that Moomuku is entitled to an award of reasonable attorneys' fees incurred in bringing its appeal on the action for breach of the covenant against encumbrances.

**3. Amount of Attorneys' Fees on Appeal**

Moomuku has attached, as one of its exhibits (exhibit A) to its application for fees, attorneys' time sheets, detailed to the quarter-hour. The entries and time allotments are reasonable, considering the complex nature of this case. Moreover, JGP has not objected specifically to exhibit A (although JGP does object to many items in exhibit B,

---

4. "The form of action under common-law pleading to recover for a breach of a covenant of title in a deed is an action of covenant. In practically all jurisdictions, however, common-law forms of action have been abolished ... with the result that the same form of action is used when suit is brought for breach of a covenant of title as is used when suit is brought for breach of any other form of contract." 20 Am.Jur.2d *Covenants, Conditions, and Restructions* § 110 (1965); *see also* 1 Am.Jur.2d *Actions* § 26 (1994) ("an action of covenant will lie to enforce a warranty contained in a deed").

which reflects time spent in the trial court). We, therefore, award the requested $19,885.00 in attorneys' fees for the appeal.[5]

#### C. *Trial–Level Attorneys' Fees*

 Moomuku also applies to this court for fees of $28,390.00 incurred at the trial level as a consequence of JGP's crossclaim. Moomuku notes that it is applying for the fees incurred at the trial level to this court "in an abundance of caution," and that it still intends to file a bill of costs with the trial court for costs incurred at the trial court level. The issue is whether the applicable trial-level attorneys' fees should be sought at the appellate level in a situation where the prevailing party is also applying for fees incurred on appeal. Although HRAP Rule 39(d) and HRS § 607–14 could be construed to allow this court to make such awards, decisions about fees incurred at the trial level are more properly within the trial court's discretion.

Importantly, JGP questions some of the billable time, arguing that "a review of the bills submitted by Moomuku reveals that it is seeking to recover attorneys' fees which have nothing to do with JGP's claims." JGP also claims that "there are numerous entries described only as phone conferences with Hirahara, which do not indicate what portion of said conferences concerned JGP claims[.]" Thus, JGP raises evidentiary-type issues regarding the fees Moomuku incurred at the trial level—a question for the trial court.

In any event, Moomuku admits that it is applying at the appellate level essentially to prevent waiving an application for fees at the trial level. Therefore, we deny Moomuku's application for fees incurred at the trial level without prejudice to Moomuku's submission of an appropriate application for such fees in the trial court.

#### III. *CONCLUSION*

Accordingly, we award $19,885.00 in attorneys' fees incurred for the appeal in favor of Moomuku and against JGP and deny Moo-

muku's application for fees incurred at the trial level without prejudice.

---

**5.** The $19,885.00 figure does not exceed twenty-five per cent of the $97,253.83 judgment against Moomuku—the limitation imposed by HRS § 607–14 (Supp.1993).