994 P.2d 1047

Howard K. LESLIE, Jr.,
Plaintiff–Appellant,

and

Leimomi Leslie Fresch, Individually, and
as Next Friend for Howard K. Leslie, Jr.,
and Howard K. Leslie, Sr., Plaintiffs–
Appellees,

v.

ESTATE OF Jamie K. TAVARES,
deceased, Defendant–Appellee,

and

John Does 1–10; Jane Does 1–10; Doe
Partnerships 1–10; Doe Corporations 1–
10; and Doe Entities 1–10, Defendants.

No. 21693.

Supreme Court of Hawai'i.

Feb. 28, 2000.

Reconsideration Denied March 22, 2000.

Frederick W. Rohlfing, III, and Lorrie Lee Stone(of Rohfling & Stone), Honolulu, for the plaintiff-appellant Howard K. Leslie, Jr., on the request.

Randall Y.S. Chung, Kevin P.H. Sumida, and Milton S. Tani (of Matsui Chung Sumida & Tsuchiyama), Honolulu, for the defendant-appellee the Estate of Jamie K. Tavares, deceased, in opposition to the request.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ., and Circuit Court Judge RAFFETTO, Assigned by Reason of Vacancy.

Opinion of the Court by LEVINSON, J.

The plaintiff-appellant Howard K. Leslie, Jr. moves this court for an order awarding him attorneys' fees in the amount of $25,299.32 and costs in the amount of $357.75, in connection with his appeal of the circuit court's order denying his motion to (1) vacate the notice of dismissal of his action against the Estate of Jaimie K. Tavares (the "Estate"), (2) reopen his action against the Estate, and (3) rescind settlement and release agreements signed in the course of this litigation. *See generally, Leslie v. Estate of Tavares,* 91 Hawai'i 394, 984 P.2d 1220 (1999) [hereinafter, *"Leslie I"*]. The Estate objects to Leslie's motion, arguing that (1) inasmuch as this court has remanded the case to the circuit court for further proceedings, Leslie is not a "prevailing party" within the meaning of Hawai'i Revised Statutes (HRS) § 607–14 (1993 and Supp.1998),[1] (2) inasmuch as the Estate had offered the full amount of the available insurance policy in settlement of Leslie's claims, the remaining issue, in which the Estate and its insurers have no involvement, was essentially whether the proceeds had been fairly apportioned and, accordingly, the Estate should not be assessed attorneys' fees and costs in litigating the case on appeal, and (3) Leslie's action was not in the nature of assumpsit within the meaning of HRS § 607–14, *see supra* note 1. The Estate's third argument is correct, and it is dispositive as to Leslie's entitlement to attorneys' fees. The Estate, however, fails to state any valid basis for denying Leslie's request for costs pursuant to Hawai'i Rules

---

1. HRS § 607–14 provides in relevant part:

**Attorneys' fees in actions in the nature of assumpsit, etc.** In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

of Appellate Procedure (HRAP) Rule 39(a).[2] Accordingly, we deny Leslie's request for attorneys' fees and grant his request for costs.

## I. *BACKGROUND*

This case arose out of a motor vehicle accident that occurred on or about December 22, 1996, in which a truck driven by Leslie collided with an auto driven by Tavares, resulting in severe injuries to Leslie and Tavares's death. On February 3, 1997, Leslie, through his mother, Leimomi Leslie Fresch, individually and in her capacity as Leslie's court-appointed next friend, filed a complaint against the Estate, alleging that Tavares's negligent driving had caused Leslie's injuries and damages. At the time of the filing of the lawsuit, Leslie was hospitalized in an intensive care unit due to the injuries he sustained as a result of the crash. Leslie was released from hospital on or about May 7, 1997. Before any answer or motion for summary judgment was filed in the case, Leslie, Fresch, and Leslie's father, Howard K. Leslie, Sr., all of whom were named plaintiffs in the complaint, signed release and indemnity agreements in settlement of all their claims against the Estate and the insurers in consideration for a total payment of $320,000.00. On July 18, 1997, Leslie filed a notice of dismissal with prejudice of his action in the circuit court.

On April 1, 1998, Leslie filed a motion to vacate the notice of dismissal, reopen the civil action, and rescind the release and settlement agreements. The circuit court entered an order denying Leslie's motion on May 13, 1998. On July 10, 1998, Leslie filed a notice of appeal to this court from the circuit court's order. In his appellate briefing, he argued that the circuit court had erred because: (1) the Estate was not entitled to deal directly with Leslie in reaching settlement agreements inasmuch as he was presumptively incompetent for purposes of the litigation by virtue of Fresch's appointment as his next friend; (2) Fresch was not entitled to settle Leslie's claims without the approval of the circuit court; and (3) the settlement agreements were unfair to Leslie. In an opinion, filed on August 31, 1999, we agreed with Leslie with respect to his first two points of error and, as to the third, we held that the circuit court had failed adequately to analyze the fairness of the settlement agreements. *See Leslie I.* We therefore vacated the circuit court's order denying Leslie's motion and remanded the matter to the circuit court for further proceedings. *Id.* The notice and judgment on appeal was filed on September 18, 1999. On October 1, 1999, Leslie filed a timely request for an award of costs and attorneys' fees incurred in connection with his appeal. The Estate filed a memorandum in opposition to Leslie's request on October 15, 1999. On October 11, 1999, Fresch and Howard K. Leslie, Sr. moved for an extension of time to object to Leslie's bill of costs. Their motion was granted, thereby extending the time to object to November 15, 1999, but no further filing was ever forthcoming.

---

2. HRAP Rule 39 (1999) provides in relevant part:

**Costs**

(a) **To Whom Allowed.** Except in criminal cases or as otherwise provided by law, if an appeal or petition is dismissed, costs shall be taxed against the appellant or petitioner upon proper application unless otherwise agreed by the parties or ordered by the appellate court; if a judgment is affirmed or a petition denied, costs shall be taxed against the appellant or petitioner unless otherwise ordered; if a judgment is reversed or a petition granted, costs shall be taxed against the appellee or the respondent unless otherwise ordered; if a judgment is affirmed in part and reversed in part, or is vacated, or a petition granted in part and denied in part, the costs shall be allowed only

as ordered by the appellate court. If the side against whom costs are assessed has multiple parties, the appellate court may apportion the assessment or impose it jointly and severally.

. . . .

(c) **Costs Defined.** Costs in the appellate courts are defined as (1) the cost of the original and one copy of the reporter's transcripts if necessary for the determination of the appeal; (2) the premiums paid for supersedeas bonds or other bonds to preserve rights pending appeal; (3) the fee for filing the appeal; (4) the cost of printing or otherwise producing necessary copies of briefs and appendices, provided that copying costs shall not exceed 20¢ per page; and (5) any other costs authorized by statute or rule.

**4**

## II. DISCUSSION

### A. Leslie's Action Was Not "In The Nature Of Assumpsit."

Leslie urges that HRS § 607–14, *see supra* note 1, entitles him to an award of attorneys' fees inasmuch as "the appeal presented to this Court constitutes an 'action' ... within the scope of HRS § 607–14" and "the nature of the issues of the 'action' on appeal [*i.e.*, rescission of the release and settlement agreement] are in assumpsit."

The predecessor statutes to HRS § 607–14 provided that, in all actions sounding in assumpsit, the prevailing party was entitled to attorneys' fees taxed to and paid by the opposing party.[3] With Hawaii's adoption of modern rules of civil procedure, the statute became difficult to apply because, given the new "notice pleading," it was no longer necessary to plead legal theories with the same precision. *See* Hawai'i Rules of Civil Procedure (HRCP) Rule 2 (1999) ("There shall be one form of action to be known as 'civil action'."). It therefore fell to the courts to decide what constituted an action "in the nature of assumpsit."

■ An "action" is generally defined as a "proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." *Black's Law Dictionary* 28 (6th ed.1990). Compatible definitions appear in HRS chapters 490 (Uniform Commercial Code)[4] and 658B (Uniform Foreign Money Claims Act),[5] but HRS ch. 607 (Costs and Fees) does not contain a definition of the term. The terms "action" and "suit" are generally considered to be synonymous.

*Nassif v. Municipal Court,* 214 Cal.App.3d 1294, 1298, 263 Cal.Rptr. 195 (1989); *MBC, Inc. v. Engel,* 119 N.H. 8, 397 A.2d 636, 638 (1979). An appeal is a continuation of an original proceeding and not a new action. *Pennsylvania Ins. Guaranty Ass'n v. Sikes,* 590 So.2d 1051, 1052 (Fla.Dist.Ct.App.1991); *People ex rel. Pennsylvania Railroad Co. v. Commerce Comm'n,* 40 Ill.2d 58, 237 N.E.2d 514, 516 (1968). The term "proceeding" is broader than the word "action." *In re Application of Kaye,* 212 N.J.Super. 703, 515 A.2d 1311, 1313 (N.J.Super.L.1986). As ordinarily used, it is broad enough to include all methods of invoking the action of courts and is generally applicable to any step taken to obtain the interposition or action of a court. *Hill v. Martin,* 296 U.S. 393, 403, 56 S.Ct. 278, 80 L.Ed. 293 (1935); *Zellerino v. Brown,* 235 Cal.App.3d 1097, 1105, 1 Cal.Rptr.2d 222 (1991); *State in the Interest of J.S.,* 273 N.J.Super. 450, 642 A.2d 430, 434 (Ch.1994); *Second Injury Fund v. Lupachino,* 45 Conn. App. 324, 695 A.2d 1072, 1084 n. 15 (1997).

■ Leslie's motion filed in the circuit court on April 1, 1998 constituted a "proceeding" rather than an "action." Leslie's appeal of the circuit court's order denying that motion was simply a continuation of that proceeding. Thus, Leslie's contention that his appeal to this court constituted an "action" within the meaning of HRS § 607–14 is unfounded—the appeal is merely the continuation of his lawsuit filed on February 3, 1997.

■ However, this court has held that it had jurisdiction to award attorneys' fees incurred on appeal pursuant to HRS § 607–14. *S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club,* 76 Hawai'i 396, 399, 879

---

3. In its original form, the statute provided:

In all the Courts of this Kingdom, in all actions of assumpsit there shall be taxed as attorneys' fees, in addition to the attorneys' fees now taxable by law, to be paid by the losing party and to be included in the sum for which execution may issue, ten percent on all sums to one hundred dollars, and two and one-half percent in addition on all sums over one hundred dollars, to be computed on the excess over one hundred dollars. The above fee shall be assessed on the amount of the judgment obtained by the plaintiff and upon the amount sued for, if the defendant obtain judgment.

1872 Haw. Sess. L. Act 29, § 5 at 25, 26.

4. HRS § 490:1–201(1)(1993) provides: " 'Action' in the sense of a judicial proceeding includes recoupment, counterclaim, set-off, suit in equity and any other proceedings in which rights are determined."

5. HRS 658B–1 (1993) provides in relevant part: " 'Action' means a judicial proceeding or arbitration in which a money payment may be awarded or enforced in respect of a foreign-money claim."

P.2d 501, 504 (1994) (*Utsunomiya II* ). In *Utsunomiya II*, this court considered the request for attorneys' fees of Moomuku Country Club (Moomuku), the prevailing party in an appeal from an order of the circuit court granting its opponent's motion for summary judgment. *S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club*, 75 Haw. 480, 866 P.2d 951, *reconsideration denied*, 76 Hawai'i 247, 75 Haw. 580, 871 P.2d 795 (1994) (*Utsunomiya I* ). This court vacated the circuit court's order and remanded the case with instructions to enter an order denying summary judgment. *Utsunomiya I* at 515–16, 866 P.2d at 968. In considering whether Moomuku was entitled to an award of attorneys' fees under HRS § 607–14, the *Utsunomiya II* court was faced with the issue whether the action was "in the nature of assumpsit." *Id.* at 399–401, 879 P.2d at 504–06. We held that, inasmuch as the action for breach of the covenant against encumbrances in a deed, litigated by Moomuku in the trial court in *Utsunomiya I*, was indeed in the nature of assumpsit, Moomuku was entitled to an award of attorneys' fees in connection with its successful appeal. *Id.*

Similarly, in *Fought & Co., Inc. v. Steel Engineering and Erection, Inc.*, 87 Hawai'i 37, 951 P.2d 487 (1998), this court considered a request for attorneys' fees advanced by appellees who had prevailed in an appeal from summary judgments that had been entered in their favor by the circuit court in a breach of contract action. We noted that, "[f]rom the beginning, the principal question at issue in this case, both at trial and on appeal, was whether the [defendant State of Hawai'i Department of Transportation] had breached its contract." *Id.* at 53, 951 P.2d at 503. Thus, this court tacitly assumed that the action, which included the appeal, was in the nature of assumpsit and applied HRS § 607–14 without further analysis of the question. *See id.* at 54, 951 P.2d at 504 ("Inasmuch As The Present Action Is In The Nature Of Assumpsit . . .").

Thus, in ascertaining the nature of the proceeding on appeal, this court has looked to the essential character of the underlying action in the trial court. Leslie argues that,

although the underlying complaint filed in this matter sounded in tort, the appeal before us is "in the nature of assumpsit" because it arose out of the circuit court's denial of his motion, which sought, *inter alia*, rescission of a settlement agreement. However, as discussed *supra*, an appeal, in itself, is not a distinct "action," but, rather, a continuation of the original action. The gravamen of Leslie's original action sounded in tort and not assumpsit. The fact that Leslie has appealed does not transform its character.

But even assuming, *arguendo*, that the nature of Leslie's motion, which gave rise to the present appeal, determines the nature of the proceeding on appeal, Leslie's suggestion that the motion was "in the nature of assumpsit" is without merit. He relies on *Helfand v. Gerson*, 105 F.3d 530 (9th Cir.1997), for the proposition that when there is doubt as to whether an action sounds in assumpsit or in tort, there is a presumption that the suit is in assumpsit. In *Helfand*, the Ninth Circuit considered an appeal of a legal malpractice action, which included claims of negligence, breach of contract, and breach of warranty. Interpreting HRS § 607–14 in light of this court's prior case law, the Ninth Circuit attempted to predict how this court would decide the nature of the action at issue. *Id.* at 536–39. The *Helfand* court articulated the following applicable principles of law:

> "The determination of when an action is in the nature of assumpsit should be based on whether the actual factual allegations are such that historically the action would have been brought in assumpsit." *Healy–Tibbitts Constr. Co. v. Hawaiian Independent Refinery, Inc.*, 673 F.2d 284, 286 (9th Cir.1982). Under Hawai['i] case law, an action in the nature of assumpsit includes "all possible contract claims." *Id.* "Assumpsit is a common law form of action which allows for the recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." *Schulz v. Honsador, Inc.*, 67 Haw. 433, 435, 690 P.2d 279, 281 (1984).[6]

---

6. The original version of section 607–14 applied

to all actions [in] assumpsit, but after Hawai['i]

The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought. *Id.* at 436, 690 P.2d at 282. Where there is doubt as to whether an action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit. *Healy–Tibbitts*, 673 F.2d at 286. Further, a plaintiff's prayer for attorney fees is a significant indication that the action is in assumpsit. *Id.*

*Id.* at 537. Relying on these principles, the *Helfand* court ruled that, in spite of the inclusion of a specific negligence claim, Helfand's action, considered as a whole, was generally "in the nature of assumpsit," and, accordingly, affirmed the federal district court's award of the defendant's attorneys' fees under HRS 607–14, holding also that the defendants were entitled to reasonable attorneys' fees on appeal pursuant to the same statute. *Id.* at 537–39.

In *Healy–Tibbitts*, another decision of the United States Court of Appeals for the Ninth Circuit interpreting HRS § 607–14, the court invoked the presumption in favor of assumpsit when there is doubt as to the nature of the action, but also cautioned that

> not every complaint that joins claims sounding in contract with claims sounding in tort need be considered a case "in the nature of assumpsit." If the contract claims are merely decorative, for instance, and not germane to the genuine dispute being litigated, the court might appropriately decline to apply the provisions of [HRS] § 607–14.

*Id.* at 286.

In the present case, Leslie's appeal dealt with the validity of his release and settlement agreement, although, in addition to rescission of the agreement, his motion in the circuit court sought to vacate of the dismissal of his lawsuit against the Estate. Obviously the primary purpose of his motion was to resuscitate his tort claims against the Estate.

The settlement agreement was relevant only because it foreclosed the further litigation of his tort claims. Consequently, the "contract" component of his April 1, 1998 motion merely fostered its primary objective—the revival of the underlying tort action, which was clearly *not* "in the nature of assumpsit."

In this connection, Leslie's reliance on *AIG Hawaii Insurance Co. v. Bateman*, 82 Hawai'i 453, 923 P.2d 395 (1996), is misplaced. In *Bateman*, an automobile liability insurance carrier filed a declaratory judgment action against Bateman and Vicente, seeking a judicial declaration that it had no duty to defend and indemnify its insured, Bateman, against Vicente's bodily injury claims. After the circuit court entered summary judgment order against AIG, AIG and Bateman entered into a settlement agreement with Vicente. At the same time, AIG appealed the circuit court's decision to this court, and, in *AIG Hawai'i Insurance Company, Inc. v. Vicente*, 78 Hawai'i 249, 891 P.2d 1041 (1995), this court reversed the circuit court's order. On remand, the circuit court granted summary judgment in favor of AIG. AIG then moved the circuit court to rescind its settlement agreement with Vicente, asserting that it had been premised on a mutual mistake of law. The circuit court denied the motion and granted Vicente's motion for attorneys' fees, pursuant to HRS § 607–14, incurred in defeating AIG's motion. On appeal in *Bateman*, this court affirmed the circuit court's order regarding the settlement agreement, referred the matter to the Office of Disciplinary Counsel for failure to disclose the settlement agreement in the course of the prior appeal, and, in a footnote, disposed of AIG's complaint regarding the award of attorneys' fees as follows:

> AIG further argues that the circuit court erroneously granted Vicente's motion for assessment of attorneys' fees and costs pursuant to HRS § 607–14 because it erroneously denied AIG's motion to rescind the release and settlement agreement. In her

---

adopted modern rules of civil procedure it was no longer necessary to plead specific legal theories, and all forms of action were merged into the "civil action." Accordingly, the statute was

amended to provide for attorney fees in all actions "in the nature of assumpsit." *Schulz*, 67 Haw. at 435, 690 P.2d at 281.

*Helfand*, 105 F.3d at 537 n. 6.

motion, Vicente argued that, because AIG sought relief in the form of rescission *and restitution* in this action, the action was in the nature of an action for assumpsit. In view of our holding that the circuit court correctly denied AIG's motion to rescind, we affirm the circuit court's award of attorneys' fees and costs.

*Bateman*, 82 Hawai'i at 458 n. 5, 923 P.2d at 400 n. 5 (emphasis added). The fact that AIG had sought restitutionary damages, in addition to rescission of a contract, was critical to the foregoing footnote. Indeed, we took pains to note that "[r]escission and cancellation are equitable remedies." *Id.* at 456, 923 P.2d at 398. Because an equitable claim for relief is not in the nature of assumpsit, *see Smothers v. Renander*, 2 Haw.App. 400, 633 P.2d 556 (1981) (an action for specific performance is an equitable remedy of ancient origin and is not an action "in the nature of assumpsit"); *Civic Realty, Inc. v. Development, Inc.*, 3 Haw.App. 101, 102, 641 P.2d 1361, 1362 (1982) (an equitable action in the nature of reformation would not fall within the scope of HRS § 607–14); *Mid–Pacific Dress Manufacturing Co., Ltd. v. Cadinha*, 33 Haw. 456 (1935) (no statute authorized attorney's fees in a suit for cancellation of an assignment, even though Revised Laws of Hawaii § 2551 (1925) authorized fees "in all actions of assumpsit"), it was the claim for restitution accompanying the rescission claim that cast the action "in the nature of assumpsit." *Cf. Hong v. Kong*, 5 Haw.App. 174, 683 P.2d 833 (1984) (holding that a claim for rescission and restitution was "an action in the nature of assumpsit").

■ Leslie did not assert a claim for restitution, and his objective in seeking rescission was not to obtain a recovery based on the settlement agreement. When the recovery of money damages is not the basis of a claim factually implicating a contract, the action is not "in the nature of assumpsit." *See Lee v. Aiu*, 85 Hawai'i 19, 31–32, 936 P.2d 655, 667–

68 (1997) (holding that a claim for specific enforcement of an agreement was not an action in the nature of assumpsit, even though the claimant prayed for damages as alternative relief). Thus, we hold that Leslie is not entitled to attorneys' fees pursuant to HRS § 607–14.

### B. *Leslie is entitled to costs pursuant to HRAP Rule 39.*

The Estate does not express any opposition to Leslie's request for costs pursuant to HRAP Rule 39(a), *see supra* note 2, with the exception of its general assertion that it was essentially a disinterested party after having paid "the full limits" of the applicable insurance policy, which is beside the point because Leslie seeks to reopen the underlying tort action and pursue it.

■ HRAP Rule 39(a) provides in relevant part that "if a judgment is reversed or a petition granted, costs shall be taxed against the appellee or the respondent unless otherwise ordered; if a judgment is affirmed in part and reversed in part, or is vacated, or a petition granted in part and denied in part, the costs shall be allowed only as ordered by the court." In the present matter, there was no judgment or petition involved on appeal. Leslie appealed the circuit court's order denying his motion as a final, appealable order, pursuant to HRS § 641–1 (1993).[7] However, Hawai'i Rules of Civil Procedure (HRCP) Rule 54(a) (1999) provides that a "judgment" includes "any order from which an appeal lies." The same interpretation should apply in the context HRAP Rule 39. The intent of the rule, as set forth *supra*, is to allow the party prevailing on appeal to recover those costs reasonably incurred in prosecuting the appeal. Although this court did not "reverse" a circuit court's "judgment," but, rather, vacated the circuit court's final order, the effect of the decision on appeal was to grant Leslie the remedy he sought, thereby causing him to "prevail" on appeal. Consequent-

7. HRS § 641–1 provides in relevant part:
   **Appeals as of right or interlocutory, civil matters.** (a) Appeals shall be allowed in civil matters from all final judgments, orders, or decrees of circuit and district courts and the land court, to the supreme court or to the intermediate appellate court, except as otherwise provided by law and subject to the authority of the intermediate appellate court to certify reassignment of a matter directly to the supreme court and subject to the authority of the supreme court to reassign a matter to itself from the intermediate appellate court.

**8**

ly, we hold that Leslie is entitled to taxation of costs against the appellees as provided by HRAP Rule 39.

Leslie's bill of costs consists of items allowable as costs pursuant to HRAP Rule 39(c), *see supra* note 2. The charges are reasonable and well-documented. Therefore, we award Leslie the requested $357.75 in costs.

### III. *CONCLUSION*

Based on the foregoing reasoning, we deny Leslie's request for $25,299.32 in attorneys' fees but order the Estate and Leimomi Leslie Fresch and Howard K. Leslie, Sr., jointly and severally, to pay Leslie's costs, incident to the present appeal, in the amount of $357.75.